[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 4743
This motion arises out of a foreclosure action filed by Resolution Trust Corporation (hereafter "RTC") as Conservator for Danbury Savings and Loan Association, against Eleanor and Robert Hausmann (hereafter "Hausmanns"), and various parties who claim an interest in the subject property, including Gateway Bank (hereafter "Gateway") and Joan Faerman (hereafter "Faerman"). Faerman has filed an answer and a cross complaint in which she alleges that the Hausmanns, together with Attorney Raymond T. Connor, conspired among themselves to enter into a series of fraudulent conveyances.
Gateway, although the cross claim was not addressed to it, answered the cross complaint. In its answer, it argues, by way of special defense, that a judgment entered on June 20, 1985 in the Judicial District of Stamford/Norwalk at Stamford (Docket No. CV85-0077468) "is res-judicata against the defendant Faerman in favor of the defendant Eleanor Hausmann and also this defendant, Gateway Bank, as successor in title by virtue of the mortgage dated September 21, 1987 from Eleanor Hausmann, referred to in paragraph 11 of the complaint." On February 28, 1992, Gateway filed an amended special defense. In the amended special defense, it alleges that "[t]he judgment lien . . . is out of the chain of title and therefore not binding on the defendant Gateway Bank," "[t]he fraud alleged in said cross-claim, constituting a tort, allegedly took place on or before June 5, 1985 and is therefore barred by the Statute of Limitations," and "[t]he fraud alleged in said cross-claim does not make the title to the subject premises voidable against the defendant Gateway Bank, who [sic] took its mortgage in good faith and for value." Gateway thereafter filed a motion for summary judgment relying upon the statute of limitations, res judicata, and the fact that the Faerman's judgment lien is out of the chain of title.
"The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven,213 Conn. 277, 279. "Generally speaking, summary judgment procedure is an attempt to dispose of cases involving sham or frivolous issues in a manner which is speedier and less expensive for all concerned than a full-dress trial." United CT Page 4744 Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364,375. Therefore, "summary judgment `shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Practice Book, Sec. 384; Lees v. Middlesex Ins. Co., 219 Conn. 644, 650.
"The party moving for summary judgment `has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law.'" (Citation omitted.) Mingachos v. CBS, Inc.,196 Conn. 91, 111. "`However, since litigants ordinarily have a constitutional right to have issues of fact decided by a jury; Ardoline v. Keegan, 140 Conn. 552, 555 . . .; the moving party for summary judgment is held to a strict standard . . .' of demonstrating his entitlement to summary judgment." (Citations omitted.) Kakadelis v. DeFabritis,191 Conn. 276, 282. To satisfy this burden, "[t]he movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." State v. Goggin, 208 Conn. 606,616.
In the instant proceeding, as previously set forth, Gateway argues that Faerman's cross claim is barred by the statute of limitations as the last alleged fraudulent conveyance occurred on June 5, 1985, some six and one-half (6-1/2) years prior to the commencement of the cross claim. "[T]he three year limitation period of Sec. 52-577 applies to all actions based on a tort unless there has been a specific statutory exclusion. The common law tort action to set aside a fraudulent conveyance of real property has not been statutorily excluded from Sec. 52-577, and we are unpersuaded that we should exclude such actions by judicial fiat." Travelers Indemnity Co. v. Rubin, 209 Conn. 437, 441. Without question, Faerman is barred by the statute of limitations from bringing a fraudulent conveyance action.
However, although a fraudulent conveyance action is governed by section 52-577, the court in Virginia Corporation v. Galanis, 223 Conn. 436, 443-44 recognized that section52-577 is not applicable where a defendant, by raising the alleged fraud as an equitable defense, is attempting to CT Page 4745 obtain a priority position as an encumbrancer. In the present case, Faerman is not attempting to set aside the fraudulent conveyance, but is attempting to have the court declare that her "Judgments and Liens are superior to and take priority over the liens and/or encumbrances of defendants Gateway Bank, successor to Columbia Federal Savings Bank, The Custom Shop Broadway Corp., Wadsworth Development Company, Inc., Raymond Asmar and The United States of America." Virginia Corporation continued by saying:
 The general rule is that a bona fide purchaser or encumbrancer from a fraudulent grantee acquires good title and takes the property discharged of the fraud so that he has priority over the fraudulent grantor's creditors. [Citations omitted.] `The rights of a purchaser [or encumbrancer] from a fraudulent transferee are superior to those of the [fraudulent] transferor's creditors only if such purchaser [or encumbrancer] is an innocent purchaser [or encumbrancer] for value. Where it appears that he had knowledge or notice of the fraudulent transfer, he will be held to have acquired the title subject to the rights of the [fraudulent] transferor's creditors. His right is inferior to that of the creditors where it appears that he knew . . . of the fraudulent transfer. . . .' (Emphasis added.)
In the cross complaint, although Faerman has alleged that she has priority by virtue of the fraudulent conveyance, she has not alleged that the prior encumbrancers knew of the alleged fraudulent transfer, or that the encumbrancers are not bona fide purchasers or encumbrancers. Consequently, she has failed to properly plead an action to establish priority based upon a fraudulent transfer and she cannot prevail on her cross complaint.
The discussion does not end at this point. "A court may not grant summary judgment sua sponte. [Citations omitted.] The issue first must be raised by the motion of a party and supported by affidavits, documents or other forms of proof." (Citation omitted.) Cummings Lockwood v. Gray, 26 Conn. App. 293,299. Since the parties have not raised this issue in their motions or memoranda in support of the motions, the CT Page 4746 court cannot grant Gateway's motion for summary judgment.
Gateway's next argument is that Faerman is barred by the doctrine of res judicata and collateral estoppel. "A defendant's motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." Perille v. Raybestos-Manhattan-Europe, Inc.,196 Conn. 529, 543. "Of course, there is no reason why, in an appropriate case, once the defense of res judicata has been raised the issue may not be resolved by way of summary judgment." (Citation omitted.) Zizka v. Water Pollution Control Authority, 195 Conn. 682, 687.
 Claim preclusion, sometimes referred to as res judicata, and issue preclusion, sometimes referred to as collateral estoppel, are first cousins. Both legal doctrines promote judicial economy by preventing relitigation of issues or claims previously resolved. [Citation omitted.] `The concepts of issue preclusion and claim preclusion are simply related ideas on a continuum, differentiated, perhaps by their breadth, and express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest.'
Scalzo v. Danbury, 224 Conn. 124, 127.
The doctrine of res judicata or "claim preclusion" provides that a former judgment may serve as an absolute bar to a subsequent action involving claims relating to such cause of action which were actually made or which might have been made. Connecticut Water Co. v. Beausoleil 204 Conn. 38,43. "Under claim preclusion analysis, a claim — that is, a cause of action — `includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. . . .' [Citations omitted.] Moreover, claim preclusion prevents the pursuit of `any claims relating to the cause of action which were actually made or might have been made."' (Citations omitted.) Scalzo v. Danbury, supra, 128. "`When a valid and final personal judgment is rendered in favor of the plaintiff: (1) [t]he plaintiff cannot thereafter maintain an CT Page 4747 action on the original claim or any part thereof. . . .'" Restatement (Second), Judgments, Sec. 18 (1982). See Orselet v. DeMatteo, 206 Conn. 542, 545. "Original claim" has been defined by the Restatement in Sec. 24(1): "`[t]he claim [that is] extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" Restatement (Second), Judgments, Sec. 24(1). This test measures the preclusive effect of an earlier judgment, and will exclude not only claims which were asserted, but also those which could have been asserted. (Emphasis added.) Duhaime v. American Reserve Life Ins. Co., 200 Conn. 360, 364.
To reiterate, in the present case, Faerman is not seeking to set aside a fraudulent conveyance, but is seeking to establish priority by utilizing the alleged fraudulent conveyance. Clearly, the present claim for priority is different from the earlier asserted claim for fraudulent conveyance and could not have been asserted in the earlier action; a cause of action on two promissory notes, unrelated to the present claim of priority. It necessarily follows that Faerman's cross claim is not barred by the doctrine of res judicata.
The claim of priority, based upon the limited issue of fraudulent conveyance, which was alleged in the Stamford action, may well prevent Faerman from relitigating that issue. "`Collateral estoppel, or issue preclusion, is the doctrine that bars relitigation, in a second action between the same parties brought upon a different claim, of issues already determined in the first action.'" Rawling v. New Haven, 206 Conn. 100, 110. "`[I]ssue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . .'" Ashe v. Swenson,397 U.S. 436, 445, 90 S.Ct. 1189, 25 L.Ed.2d 469; Aetna Casualty Surety Co. v. Jones, 220 Conn. 285, 296; Scalzo v. City of Danbury, supra, 128. (Emphasis added.)
 Issue preclusion applies if `an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment. . . .' [Citation omitted.] An issue is `actually litigated' if it CT Page 4748 determination, and in fact determined. [Citation omitted.] If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action.
Scalzo v. City of Danbury, supra, 128-29. (Emphasis added.) Therefore, "`[t]o establish whether collateral estoppel applies, the court must determine what facts were necessarily determined in the first trial, and must then assess whether the [party] is attempting to relitigate those facts in the second proceeding.'" State v. Hope, 215 Conn. 570, 584, cert. denied, 111 S.Ct. 968, 112 L.Ed.2d 1054; Aetna Casualty Surety Co. v. Jones, supra, 297. (Emphasis added.)
 There is a strong basis for the rationale behind the rule that an issue must be essential to the judgment before it can be barred by collateral estoppel. In Halpern v. Swartz, 426 F.2d 102, 105
(2d Cir. 1970), the court gave two reasons why an issue must be essential to the judgment before collateral estoppel applies: `First, the decision on an issue not essential to the prior judgment may not have been afforded the careful deliberation and analysis normally applied to essential issues, since a different disposition of the inessential issue would not affect the judgment . . . . Second, the decision on an inessential issue in the prior judgment was not subject to the important safeguard as to its correctness, to wit: a contested review on appeal.' (Citation omitted.) See also 1 Restatement (Second), Judgments, Sec. 27 (1982).
Scalzo v. Danbury, supra, 129 n. 5.
As a result, in response to the defense of res judicata and collateral estoppel, Faerman submitted a one page opposition memorandum to the motion for summary judgment, asserting that she is not barred by res judicata because "in over 500 pages of testimony that Gaetway [sic] relies upon, not one word of testimony or evidence was offered tom [sic] the Trial Court on the issue of a fraudulent transfer, and when the party was offered the opportunity to offer any such testimony it failed to do so." The court is satisfied that CT Page 4749 the issue of fraudulent conveyance was neither actually litigated and necessarily determined in the prior action, nor was it essential to the earlier judgment. The doctrine of collateral estoppel does not prevent Faerman from arguing or asserting the issue of fraudulent conveyance in this case.
Moraghan, J.