### AMY JEANNE CONWAY v. TOWN OF WILTON ET AL.
### (13524)

Landau, Schaller and Spear, Js.

---

Argued May 22—decision released September 12, 1995

*David T. Grudberg*, with whom, on the brief, was *Ira B. Grudberg*, for the appellant (plaintiff).

*Raymond J. Plouffe, Jr.*, with whom, on the brief, was *Kevin S. Coyne*, for the appellees (named defendant et al.).

*Hugh W. Cuthbertson*, with whom, on the brief, was *Dana Shaw MacKinnon*, for the appellee (defendant Connecticut Association of Schools).

SPEAR, J. The plaintiff, Amy Jeanne Conway, brought an action against the town of Wilton (town), David Dixon[1] and the Connecticut Association of Secondary Schools (association),[2] for personal injuries sustained while participating in a state high school tennis tournament on premises owned by the town and sponsored by the association. The trial court granted the defendants' motions for summary judgment, ruling that they were

---

[1] Dixon was the parks and recreation director for the town at the time of the incident.

[2] The Connecticut Association of Secondary Schools is now named the Connecticut Association of Schools.

immune from liability pursuant to the Connecticut Recreational Land Use Act, General Statutes § 52-557f et seq.[3]

On appeal, the plaintiff claims that the trial court improperly granted the motions for summary judgment because (1) the act as applied to the plaintiff violates

[3] General Statutes § 52-557f provides: "As used in sections 52-557f to 52-557i, inclusive:

"(1) 'Charge' means the admission price or fee asked in return for invitation or permission to enter or go upon the land;

"(2) 'Land' means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty;

"(3) 'Owner' means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises;

"(4) 'Recreational purpose' includes, but is not limited to, any of the following, or any combination thereof: Hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, snow skiing, ice skating, sledding, hang gliding, sport parachuting, hot air ballooning and viewing or enjoying historical, archaeological, scenic or scientific sites."

General Statutes § 52-557g provides: "(a) Except as provided in section 52-557h, an owner of land who makes all or any part of the land available to the public without charge, rent, fee or other commercial service for recreational purposes owes no duty of care to keep the land, or the part thereof so made available, safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure or activity on the land to persons entering for recreational purposes.

"(b) Except as provided in section 52-557h, an owner of land who, either directly or indirectly, invites or permits without charge, rent, fee or other commercial service any person to use the land, or part thereof, for recreational purposes does not thereby: (1) Make any representation that the premises are safe for any purpose; (2) confer upon the person who enters or uses the land for recreational purposes the legal status of an invitee or licensee to whom a duty of care is owed; or (3) assume responsibility for or incur liability for any injury to person or property caused by an act or omission of the owner.

"(c) Unless otherwise agreed in writing, the provisions of subsections (a) and (b) of this section shall be deemed applicable to the duties and liability of an owner of land leased to the state or any subdivision thereof for recreational purposes."

General Statutes § 52-557h provides: "Nothing in sections 52-557f to 52-557i, inclusive, limits in any way the liability of any owner of land which otherwise exists: (1) For wilful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; (2) for injury suffered in any case where the owner of land charges the person or persons who enter

article first, § 10, of the Connecticut constitution,[4] (2) the association owed a duty to the plaintiff that is independent of the act, and (3) Dixon and the town failed to make the premises "available to the public," and, therefore, are not entitled to statutory immunity. We disagree and affirm the judgment of the trial court.[5]

"The standard for appellate review of a trial court's decision to grant a summary judgment motion is well established. Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Connecticut Bank & Trust Co.* v. *Carriage Lane Associates*, 219 Conn. 772, 780–81, 595 A.2d 334 (1991); *Lees* v. *Middlesex Ins. Co.*, 219 Conn. 644, 650, 594 A.2d 952 (1991). Although the party seeking summary

or go on the land for the recreational use thereof, except that, in the case of land leased to the state or a subdivision thereof, any consideration received by the owner for the lease shall not be deemed a charge within the meaning of this section."

General Statutes § 52-557i provides: "Nothing in sections 52-557f to 52-557i, inclusive, shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of said sections to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care."

[4] The Connecticut constitution, article first, § 10, provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice without sale, denial or delay."

[5] The plaintiff also claims that *Scrapchansky* v. *Plainfield*, 226 Conn. 446, 627 A.2d 1329 (1993) (league baseball game was recreational purpose as contemplated by act) and *Manning* v. *Barenz*, 221 Conn. 256, 603 A.2d 399 (1992) (municipalities and their employees are entitled to immunity from liability for injuries sustained on land available to public for recreational purposes) should be overruled. Because the Appellate Court cannot overrule a Supreme Court decision, we will not review the claim. See *Lash* v. *Aetna Casualty & Surety Co.*, 36 Conn. App. 623, 624–25, 652 A.2d 526 (1995). The plaintiff makes this claim only to preserve it in the event of Supreme Court review.

judgment has the burden of showing the nonexistence of any material fact; *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Practice Book §§ 380, 381; *Burns* v. *Hartford Hospital*, [192 Conn. 451, 455, 472 A.2d 1257 (1984)]. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. *Town Bank & Trust Co.* v. *Benson*, 176 Conn. 304, 309, 407 A.2d 971 (1978). *Strada* v. *Connecticut Newspapers, Inc.*, 193 Conn. 313, 317, 477 A.2d 1005 (1984). The test is whether a party would be entitled to a directed verdict on the same facts. *Batick* v. *Seymour*, 186 Conn. 632, 647, 443 A.2d 471 (1982)." (Internal quotation marks omitted.) *New Milford Savings Bank* v. *Roina*, 38 Conn. App. 240, 243–44, 659 A.2d 1226 (1995).

The facts, as viewed in the light most favorable to the plaintiff, are as follows. On June 9, 1986, the Connecticut Interscholastic Athletic Conference (conference)[6] held a championship tennis tournament for high school girls at the Wilton High School tennis courts. No fee was charged for the use of the tennis courts. During the tennis tournament, the plaintiff, a competitor in the tournament, fell because of an alleged defect in the courts and sustained serious injuries to her knee and ankle. In her personal injury action, the plaintiff alleged that the proximate cause of her injuries was the negligence of Dixon and his staff in maintaining the tennis courts and the negligence of the association in selecting the allegedly faulty court for the tournament.

---

[6] The conference, an extension of the association, directs and controls athletic competition between the secondary schools of Connecticut.

## I

We first address the plaintiff's claim that the recreational use statute violates the "open courts" provision of article first, § 10, of the Connecticut constitution.[7] She asserts that, "[i]f viewed as a limitation on the right to redress for an injury caused by negligence, the restriction under consideration stands contrary to the mandate of article first, § 10, and thus must fall." *Gentile* v. *Altermatt*, 169 Conn. 267, 284, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976).

This court previously rejected a similar constitutional attack on the recreational use statute in *Genco* v. *Connecticut Light & Power Co.*, 7 Conn. App. 164, 508 A.2d 58 (1986). In *Genco*, we concluded that the statute "does not restrict the right to redress for an actionable injury but, rather, redefines the injury or the class of persons injured to which this constitutional right of redress attaches. . . . Thus, the right of redress for injury is constitutional in its nature but the nature of a specific injury is a right derived from the common law or statute. . . . A statute limiting the liability of owners who provide the public with park area for outdoor recreational purposes is a reasonable exercise of legislative power, and it does not violate the constitutional provision that the courts shall be open to every person for redress of any injury." (Citation omitted; internal quotation marks omitted.) Id., 173–74.

General Statutes § 52-557g provides that an injury caused by negligence or nuisance on land provided for public recreational use is not an actionable injury. Consequently, such injury is not subject to preservation under article first, § 10, of the Connecticut constitution. "What is of constitutional dimensions, then, is the right of redress and not the nature of the particular injury

---

[7] See footnote 4.

for which redress is sought. Stated differently, the right to redress in the courts must remain inviolate but it does not attach unless one suffers a recognized injury." *Gentile* v. *Altermatt*, supra, 169 Conn. 284. Consistent with prior cases, we conclude that the act does not violate article first, § 10, of the Connecticut constitution.

## II

The plaintiff next claims that during the tennis tournament the association owes a duty to the athletes that is independent of its role as "owner," and that such duty is not affected by the immunity protection of § 52-557g. She argues that a public school "authority owes a duty of ordinary care under the circumstances to participants in . . . athletic events sponsored, or conducted under the auspices of, such authority." 35 A.L.R.3d 734 (1971).[8] The alleged duty turns on the relationship between an academic institution and its students. The plaintiff further claims that this issue involved a finding of fact, and that the trial court erroneously rendered summary judgment in light of the existence of a disputed fact. We disagree.

General Statutes § 52-557h provides only two exceptions to immunity from liability under this statute: (1) if a fee is charged for the use of the land; or (2) if the landowner wilfully or maliciously fails to warn against a dangerous condition. The plaintiff does not allege that either of the exceptions apply. It is well settled that a court cannot read additional exceptions into a statute where the legislature has neglected or chosen not to do so. See *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 396, 618 A.2d 1340 (1993); *Colli* v. *Real Estate Commission*, 169 Conn. 445, 452, 364 A.2d 167 (1975). Furthermore, in *Manning* v. *Barenz*, 221 Conn.

---

[8] The plaintiff cites to no case involving an immunity statute, such as the act, where an independent duty to competitors in athletics is recognized.

256, 603 A.2d 399 (1992), our Supreme Court expressly rejected a similar claim. The court in *Manning* held that the defendant, employees of the landowner, "must be considered within the definition of 'owners' by reason of their being 'persons in control of the premises' . . . . To hold otherwise would render the statute meaningless. The plaintiffs could completely bypass this legislation by simply bringing suit against [an owner's employees]." Id., 262. The end result could be that the protected parties would be liable for the damages from which they are immune by § 52-557g.

To hold that the association owed a supplemental duty of care would effectively circumvent § 52-557g. That statute explicitly defines an injury on land open to the public for recreational purposes as nonactionable. It provides that "no duty of care" is owed to persons entering the land for recreational purposes and that the landowner does not "[m]ake any representation that the premises are safe for any purpose." General Statutes § 52-557g (b) (1). The statute also provides that the landowner does not "assume responsibility for or incur liability for any injury . . . ." General Statutes § 52-557g (b) (3). The association falls within the statutory definition set forth in § 52-557f (3) as an "owner" by being a "person in control of the premises." The association is consequently immune from liability for the plaintiff's injuries that resulted from her fall on premises covered by the recreational use statute. The plaintiff's claim that an issue of material fact exists is without merit because "[t]he question whether the statute applies is a matter of law and, since no genuine issue of material facts relevant to this determination exists, summary judgment is appropriate." *Jennett* v. *United States*, 597 F. Sup. 110, 112 (D. Conn. 1984).

### III

The plaintiff's remaining claim is that a genuine issue of material fact existed as to whether the property was

made available to the public as required by § 52-557g. We disagree.

In order to prevail on their motion for summary judgment, Dixon and the town, had the burden of proving that the land was made available to the public for the purposes of recreation and that no fee was charged for the use of the premises pursuant to § 52-557g. In support of their motion, they submitted the affidavits of town attorney G. Kenneth Bernhard and parks and recreation director Steve Pierce.[9] The fact that no fee was charged was unchallenged. On December 19, 1990, Pierce, in answer to an interrogatory propounded by the plaintiff, stated that the tennis courts were not available to the public during the tennis tournament. In his affidavit of July 15, 1992, however, Pierce stated that "said tennis courts were open for public/recreational use at the site of the [conference] High School Girls' Tournament." The plaintiff claims that this apparent inconsistency is a disputed issue of material fact. Our Supreme Court has previously decided that because only one group of users can access a particular facility at a given time does not mean that the public has no access. It simply means that physical limitations preclude simultaneous unlimited access to a facility at all times by all members of the public. See *Scrapchansky* v. *Plainfield*, 226 Conn. 446, 452–54, 627 A.2d 1329 (1993).

The legislature has defined "recreational purpose" in § 52-557g as, including, but not limited to, recreational activities, several of which are competitive team sports. "Team sports are certainly recreational and no less so if teams are organized into a league. . . . Because an amateur sport is organized and played by teams does not deprive it of its recreational qualities. To conclude otherwise would be to impose an overly restrictive meaning on the term 'recreational purpose' in the stat-

[9] Pierce is the current parks and recreation director for the town.

ute, a meaning that is not warranted by the 'includes, but is not limited to' language of § 52-557f (4)." (Citation omitted.) Id., 457–58. The Supreme Court in *Scrapchansky* recognized that certain team sports necessarily place limitations on the land's status as "available to the public." Id., 452–53. There is no inconsistency, and, therefore, there is no genuine issue of material fact in dispute. Therefore, the trial court properly granted the town's and Dixon's motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.